Argued February 4, affirmed April 8, 1953

MACOMBER *v.* ALEXANDER

255 P. 2d 164

*Merlin Estep,* of Salem, argued the cause for appellant. On the brief were Hewitt, Estep & Sorensen.

*Lloyd G. Hammel,* Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief was George Neuner, Attorney General, of Salem.

Before Latourette, Chief Justice, and Warner, Rossman, Lusk, Brand and Perry, Justices.

BRAND, J.

The plaintiff Macomber instituted this action by filing a petition for a writ of habeas corpus. The writ issued and the defendant Alexander filed a return, setting forth a judgment by virtue of which he held the plaintiff in custody in the state penitentiary. The plaintiff filed an amended traverse against which a demurrer was filed by the defendant and sustained by the circuit court. The writ was dismissed with prejudice and the plaintiff was remanded to the custody of the defendant and the plaintiff appealed. The facts established by the judicial record and alleged in the amended traverse will be set forth in chronological order.

On 19 October 1939 Macomber was convicted of the crime of grand larceny and was sentenced to five years imprisonment. Thereafter an information was filed by the district attorney of Polk county, charging him with having been convicted of two previous felonies prior to his conviction on 19 October 1939, the two previous convictions being for the crime of grand larceny in September 1931 and the crime of assault with intent to rob in May 1933. The defendant was informed by the court of the allegations contained in the information and of his right to be tried as to the truth thereof. Defendant stated that he was the same person mentioned in the several records and had been convicted as charged in said information after being duly cautioned as to his rights. Thereupon and on 23 October

1939 the circuit court of Polk county vacated the judgment imposed on 19 October 1939 and sentenced the defendant Macomber to a maximum term of 39 years 360 days. On 25 September 1945, Macomber, as plaintiff, secured the issuance of a writ of habeas corpus and on 15 April 1946 the circuit court of Marion county issued an order discharging the plaintiff from custody. The defendant Alexander appealed to the Supreme Court and the order discharging the plaintiff was reversed by this court. *Macomber v. State et al*, 181 Or 208, 180 P2d 793. On 23 March 1948, by order of this court, the plaintiff was remanded to the custody of the warden of the penitentiary. At the time of the issuance of our mandate, the plaintiff was in the state of Washington and was forcibly transported from that state to the Oregon state penitentiary. On 25 May 1951 the plaintiff filed the pending petition for habeas corpus in Marion county. After hearing, the writ was dismissed and the plaintiff was remanded to the custody of the warden. On the plaintiff's appeal, the questions for determination arise upon the demurrer to the amended traverse. The amended traverse contains the following allegations and contentions:

"V

"Plaintiff alleges that the imprisonment, incarceration and restraint of plaintiff was and is illegal upon the following grounds, noe [sic] of which was presented to or decided by the said Supreme Court in the above mentioned case;

"1. The order of sentence under which the plaintiff is now serving is void for the reason that said order of sentence was not entered or imposed until after the plaintiff had been committed to the Oregon State Penitentiary under sentence on his last previous conviction, and had served a part of said sentence.

"2. The appellants in the said proceeding before the Supreme Court of Oregon had no right of appeal, and the Court had no jurisdiction of said appeal, as O.C.L.A., 11-443, which purports to grant such right and jurisdiction is in conflict with Article I, Section 23, of the Oregon Constitution, which prohibits the suspension of the Writ of Habeas Corpus.

"3. The appeal granted from an order in habeas corpus proceedings by O.C.L.A., 11-443 is for the correction of the record, and the future guidance of inferior courts only, and cannot affect the rights of a person who has by the order appealed from been unconditionally discharged.

"4. The present imprisonment of the plaintiff, and the order thereof, was and is illegal and void for the reason that the plaintiff had been unconditionally released, and his sentence vacated without any qualification whatsoever, by the order of the Circuit Court hereinabove mentioned, and attached hereto, and Plaintiff was in fact released from the Oregon State Penitentiary pursuant to said order, and his present reimprisonment is in fact in violation of Article I, Section 23, of the Oregon Constitution, which prohibits the suspension of the Writ of Habeas Corpus.

"5. At no time since the order entering the mandate of the Supreme Court, a copy of which is on file herein, attached to the petition and marked Exhibit 'A', has the petitioner been lawfully committed to the Oregon State Penitentiary for the following reasons;

"a. On the date of the said order entering the mandate of the Supreme Court the plaintiff was in fact in the State of Washington, and there remained until he was seized and restrained by defendant herein, together with other persons whose exact identity is unknown, and was immediately forcibly transported from the State of Washington to the Oregon State Penitentiary.

"b. Said defendant and said other persons

acted wholly without legal authority to so seize and transport said plaintiff to the State of Oregon, in that the extradition of the plaintiff had not been authorized as prescribed by the laws of Oregon.

"c. At the time of said seizure and transportation plaintiff was in custody of the State of Washington pursuant to a conviction of a crime under the laws of the State of Washington, and was not lawfully released from said custody.

"VI

"At the time of his imprisonment under said order entering the mandate of the Supreme Court of Oregon, hereinabove mentioned, and continuously thereafter, the plaintiff desired and attempted to petition the Supreme Court of Oregon for a re-hearing, and did everything within his power to gain access to the courts, but was unqualifiedly denied permission to contact legal counsel or to gain access to the courts in any other manner whatsoever, until early in the calender [sic] year, 1951."

By his first assignment, the plaintiff asserts that the court erred in ruling that the plaintiff's present imprisonment is authorized by statute.

The essence of the plaintiff's contention is that a prisoner who has been discharged from custody by a trial court cannot be remanded to custody when, upon appeal, it has been determined that the trial court erred in making the order discharging the prisoner. The issue presented may be subdivided as follows: First, is there a right of appeal from an order discharging a prisoner from custody, and second, if, upon the appeal it is determined that error was committed in the order discharging the prisoner, may the appellate court by mandate direct that the prisoner who has

been enlarged be remanded to custody? The general rule has been variously stated.

"The decided weight of authority is to the effect that in the absence of statutory provision, a judgment in habeas corpus proceedings discharging or refusing to discharge a prisoner cannot be reviewed on appeal or error proceedings. * * *" 2 Am Jur, Appeal and Error, § 122, p 922. See also 2 Am Jur, Appeal and Error, § 175, p 956.

The common-law rule has been frequently stated as being only a limitation upon the right of appeal from orders discharging the prisoner.

"The decided weight of authority is to the effect that, in the absence of statutory provision, a judgment in habeas corpus proceedings discharging a prisoner cannot be reviewed by the state or by any public officer on appeal or writ of error." 10 ALR 386.

■ The plaintiff concedes that there is a statutory right of appeal in Oregon, but contends that the enactment "does not, either expressly or by necessary implication, authorize the re-imprisonment upon reversal of the lower court of persons unconditionally discharged on Habeas Corpus proceedings, without a subsequent proceeding in the lower court." The Oregon statutes provide:

"An appeal may be taken from the circuit court to the Supreme Court in any special statutory proceeding under the same conditions, in the same manner and with like effect as from a judgment, decree or order entered in an action at law or suit in equity, unless such appeal is expressly prohibited by the law authorizing such special statutory proceeding." OCLA, § 11-103.

It is unnecessary to decide whether this statute is applicable in habeas corpus cases, for the right of

.appeal in Oregon is expressly given in the following statutory provision which is a part of the chapter on habeas corpus:

> "Any party to a proceeding by habeas corpus, including the state when the district attorney appears therein, may appeal from the judgment of the circuit or county court refusing to allow such writ or any final judgment therein, either in term time or vacation, in like manner and with like effect as in an action. No question once finally determined upon a proceeding by habeas corpus shall be reexamined upon another or subsequent proceeding of the same kind." OCLA, § 11-443.

The plaintiff places reliance upon the provisions of OCLA, § 11-428 which read in part as follows:

> "No person who has been finally discharged upon a proceeding by habeas corpus, pursuant to the provisions of this chapter, shall be again imprisoned, restrained, or kept in custody for the same cause * * *."

Construing both sections together, as is our duty, we think the legislative intent is clear. A circuit court order discharging a prisoner from custody is a "final judgment" within the meaning of OCLA, § 11-443, relating to appeals, but a person has not been "finally discharged" within the meaning of OCLA, § 11-428 until an appeal, if taken, has been decided by this court. A comparison of OCLA, § 11-428 with the corresponding section of the early New York law, discloses a striking resemblance between the two, and in most respects, a verbal identity. There is, however, one notable difference. The New York statute provides that no person "who has been discharged" shall be again imprisoned for the same cause. See 3 Revised Statutes of New York (1875) part 3, chapter 9, Article Second, § 75. It omits the word "finally" which pre-

cedes the word "discharged" in the Oregon statute. The word "finally" must have been deliberately inserted by the draftsmen of the Oregon statute in the year 1862. The New York statute now authorizes appeals from final orders discharging a prisoner. See Civil Practice Act, Vol. 6B, sections 1274 and 1275. On the face of the Oregon statute authorizing appeal, any party may appeal from any final judgment "with like effect as in an action." The normal effect of a decision on appeal in an action is to affirm or reverse the judgment below.

As early as 1881 this court entertained an appeal from an order discharging a prisoner on habeas corpus. In that case it was held that the plaintiff had been properly discharged from custody and judgment was affirmed. *Pomeroy v. Lappeus,* 9 Or 363. In *Barton v. Saunders,* 16 Or 51, this court reversed an order discharging the plaintiff from custody under civil arrest. The cause was remanded to the circuit court with directions that judgment be entered in accordance with the mandate and the writ dismissed. *In re Davenport,* 114 Or 650, 236 P 758 was a case in which the plaintiff brought habeas corpus and obtained a judgment discharging her from custody. The state appealed and the case was decided on the merits, the judgment being affirmed. In *Garner v. Alexander,* 167 Or 670, 120 P2d 238, the trial court discharged the plaintiff from the custody of the warden of the penitentiary. The defendant appealed. This court reversed the lower court and remanded the cause with instructions to set aside its order and remand the plaintiff to the custody of the warden. Finally, we come to *Macomber v. State et al,* 181 Or 208, 180 P2d 793. That case involved the same plaintiff and the same sentence which is brought in question here. The plaintiff

brought habeas corpus in Marion county, claiming that the sentence of 39 years 360 days which had been imposed by the circuit court of Polk county was void. The Marion county court discharged the plaintiff from custody and an appeal was taken by the State of Oregon and by the defendant warden of the penitentiary. The judgment was reversed and the circuit court was directed to remand the plaintiff to the custody of the warden of the penitentiary.

The foregoing review of the authorities is sufficient to show that the Oregon statute has been consistently held to authorize appeals from orders discharging prisoners from custody and to also authorize this court to remand the plaintiff to custody upon its determination that the order of discharge was erroneous.

In *Eagles v. United States ex rel. Samuels,* 329 US 304, 91 L ed 308, the Circuit Court of Appeals unconditionally released the respondent on the ground that he had been illegally inducted into military service. The Supreme Court said, "Affirmance makes the prisoner's release final and unconditional. Reversal undoes what the habeas corpus court did and makes lawful a resumption of the custody."

Orders discharging a prisoner have been appealed and the plaintiff has been remanded to the custody from which he was erroneously released in many cases. *Ex parte Blades,* 59 Idaho 682, 86 P2d 737; *People ex rel. Shapiro v. Keeper of City Prison,* 290 NY 393, 49 NE2d 498 (and see same case below, 39 NYS2d 526); *State ex rel. Bond v. Langum,* 135 Minn 320, 160 NW 858; *State v. Towery,* 143 Ala 48, 39 So 309; *Winnovich v. Emery,* 33 Utah 345, 93 P 988; *People ex rel. Jaffe v. Henderson,* 270 NY 638, 1 NE2d 368; *Haddox, Warden v. Richardson,* 168 F 635; *People ex rel. Dinsmore v.*

*Keeper of Erie County Penitentiary,* 109 NYS 531; *James v. Amrine,* 157 Kan 397, 140 P2d 362; *Knewal v. Egan,* 268 US 442, 69 L ed 1036; *State v. Rivers,* 16 NJ Super 159, 84 A2d 16; *Quenstedt v. Wilson,* 173 Md 11 194 A 354; *State of Tennessee v. Hamilton,* 28 Ala App 587, 190 So 306; *Edmonson v. Ramsay,* 122 Miss 450, 84 So 455, 10 ALR 380; and see notes 10 ALR 385.

In *State v. Grottkau,* 73 Wis 589, 41 NW80 (1889) it was held that there could be no appeal from an order discharging the prisoner from custody. However, the statute was amended and in the later case of *Drewniak v. State ex rel. Jacquest,* 239 Wis 475, 1 NW 2d 899, it was held that an order discharging a person from custody on a writ of habeas corpus is reviewable on writ of error.

The plaintiff relies upon *Wangness v. McAlpine,* 46 SD 75, 190 NW 883. In that case the plaintiff secured her discharge from custody in habeas corpus. The defendant sheriff appealed. It was contended that no appeal lies from such an order. The court held that the decision of a circuit court, either granting or refusing a release in habeas corpus, is a final order affecting a substantial right from which an appeal will lie to the Supreme Court. It was there held that the state was taking the appeal only to settle the question of law, and that the final decision of the Supreme Court would have no other effect than to settle such question in the future. The decision was based upon the construction given to the South Dakota habeas corpus statute, which provided that "no person who has been discharged * * * shall be again imprisoned * * *." There was no special provision authorizing appeal in habeas corpus cases. The South Dakota statute differs

from the Oregon statute in that it omits the word "finally" preceding the word "discharged". The case is not in point.

In *Stuart v. Smith,* 101 Me 397, 64 A 663, it was held that no exceptions could be taken to an order discharging a prisoner on habeas corpus. The case is distinguishable. At the time of the decision, habeas corpus proceedings were governed by Revised Statutes of Maine, 1903, chapter 101. It contained no provision for appeal, and section 29 of that act differed materially from the provisions of OCLA, § 11-428. Instead of the Oregon provision, "No person who has been *finally discharged* * * * shall be again imprisoned", the Maine statute provided that "No person, enlarged by habeas corpus, shall be again imprisoned * * *." (Italics ours.) The Maine statute has been since amended.

*People ex rel. Sabatino v. Jennings,* 246 NY 258, 158 NE 613, 63 ALR 1458 is cited by the plaintiff. In that case the Appellate Division of the Supreme Court of New York discharged the plaintiff from custody and the warden of the prison appealed. Pending the appeal the warden kept the plaintiff in prison, disregarding the order for his immediate discharge. While the case was pending in the Court of Appeals, the plaintiff sought his release "upon his own recognizance until the appeal shall be determined." The court observed that by force of the Civil Practice Act, section 1275, the people may appeal from a final order of discharge, citing *Hubert v. Kaiser,* 206 NY 46, 99 NE 195, but the court added:

> "* * * We have never held that the notice of appeal nullifies the mandate of discharge and works a supersedeas at the will of the custodian. There is

indeed authority to the effect that a stay may not be granted even by order of the court (People ex rel. Young v. Stout, 10 Misc. 247, 31 N.Y. Supp. 421), though a different rule prevails, it seems, in other jurisdictions (Henderson v. James, 52 Ohio St. 242, 27 L.R.A. 290, 39 N.E. 805, 9 Am. Crim. Rep. 711). We leave that question open. Certain it is, at least, that the writ may not be thwarted at the pleasure of the jailer. A statute suspending the effect of the discharge by the mere force of an appeal would be at war with the mandate of the Constitution whereby the writ of habeas corpus is preserved in all its ancient plentitude. * * *''

The case is clearly distinguishable from the one at bar. The court was not discussing the power to remand the plaintiff to custody after decision of the case upon appeal, but was considering only his right to be at large pending the appeal.

Plaintiff also relies upon the famous case of *People ex rel. Tweed v. Liscomb,* 60 NY 559. In that case William M. Tweed had been found guilty upon 204 counts and had been sentenced to 12 successive terms of imprisonment. The lower New York courts refused to discharge the relator on his petition for habeas corpus and he brought the case to the court of appeals. His right of appeal was not questioned and the right of appeal from an order discharging a prisoner was not in issue and was not discussed. The case is of interest only for the often-quoted pronouncement that ''This writ cannot be abrogated, or its efficiency curtailed by legislative action.'' This language was not used with reference to the constitutional validity of statutory provision for appeal. The case was decided in 1875, at a time when the New York statutes authorized appeals even in cases in which the petitioner had been discharged by the court below.

*Ex parte Jilz,* 64 Mo 205, 27 Am Rep 218 is not in point. The decision did not involve the effect of reversal on appeal of an order discharging a prisoner.

██ The authorities establish that OCLA, § 11-443 concerning appeals in habeas corpus cases authorize the appellate court to reverse orders discharging a prisoner from custody and to remand the prisoner to custody upon determination in the appellate court that the order of discharge was contrary to law. The fact that at common law there was no appeal from an order discharging a prisoner on habeas corpus has little bearing upon the issue here. Appeal is not a matter of constitutional right; it is the child of statute. That statutory right of appeal has existed in this and many other states for nearly a century. The plaintiff argues that ''A construction of the statute which would lessen the measure of liberty enjoyed by persons discharged in Habeas Corpus proceedings at common law is not to be favored.'' When a trial court dismisses a writ and remands the prisoner to custody, the right of appeal is a valuable bulwark for the protection of the rights of the prisoner. When the trial court orders the discharge of a prisoner from custody, and the defendant, by appeal secures a reversal of the order, no one is deprived of a constitutional right to be at large. A remand to custody occurs only when the court of last resort determines that the prisoner never should have been discharged in the first place. No statute such as OCLA, § 11-428 should be construed to hold that a convict who receives an order of discharge to which he was never entitled is thereby freed from serving a lawful sentence. Any contention to the contrary is fallacious, and if adopted, would be disruptive of the administration of criminal justice.

The second assignment of error reads as follows:

"The Court erred in failing to rule that the Appellant's present imprisonment is in violation of the Constitution of Oregon, Article I, Section 23, prohibiting the suspension of the privilege of the Writ of Habeas Corpus."

That section of the constitution incorporates into our law the usual provisions that "The privilege of the writ of habeas corpus shall not be suspended, unless, in case of rebellion or invasion, the public safety requires it." Oregon Constitution, Article I, § 23.

■ The generally accepted view is that the constitutional provision is a restraint upon executive and legislative powers, rather than upon judicial action in any single case. However, in *Huffman v. Alexander,* 197 Or 283, 251 P2d 87, we said:

"* * * We recognize that the writ of habeas corpus should be left sufficiently elastic so that a court may, in the exercise of proper jurisdiction, deal effectively with any and all forms of illegal restraint. Price v. Johnston, 334 US 266, 68 S Ct 1049, 92 L ed 1356."

We therefore make no pronouncement that the constitutional limitation can never, under any circumstances, impose any limitations upon the judiciary, but we hold that, where statutes authorize the right of appeal from orders discharging a prisoner from custody, and when such an order is reversed on appeal, the remanding of the prisoner to custody is not violative of the constitutional provision.

In *Miller v. Gordon,* 93 Kan 382, 144 P 274, the court said:

"* * * While it is true that the purpose and object of the writ of habeas corpus is to provide a

summary proceeding to determine the lawfulness of the personal restraint of the prisoner, it does not by any means follow that giving the state the right to appeal from an order discharging him amounts to a suspension of the writ.

"* * * It is quite obvious that those courts which hold that appeals may be authorized by statute recognize that there is little force in the claim that an appeal amounts to a suspension of the writ, in violation of constitutional provisions, because, if such is the effect of allowing an appeal, the constitutional objection could not be avoided by an enactment of the Legislature."

Other authorities support the proposition that the privilege of the writ is not suspended by according to the state the right to an appellate review of an order discharging a prisoner from custody. The following cases are cited here only upon that issue: *State v. Towery et al; Winnovich v. Emery; James v. Amrine,* all supra; and 39 CJS, Habeas Corpus, § 123; 3 Am Jur, Appeal and Error, §§ 555, 556; 10 ALR 385, 390. The only authorities cited by the plaintiff are *People ex rel. Sabatino v. Jennings; People ex rel. Tweed v. Liscomb; Wangness v. McAlpine,* all supra; and *People v. Woodward,* 150 App Div 770, 135 NY 373; and *Turner v. Hendryx,* 86 Or 590, 167 P 1019, 169 P 109. These decisions announce the familiar doctrine that the writ cannot be abrogated or its efficiency curtailed by legislative action. With the exception of *Wangness v. McAlpine,* already discussed, they do not even indicate that statutes authorizing reversal and remand on appeal abrogate the writ or curtail its efficiency.

■ By his third assignment of error, the plaintiff argues, in substance, that this court deprived the plaintiff of liberty in violation of the Fourteenth Amend-

ment when we remanded him to custody after reversing the lower court in *Macomber v. State,* supra. The authorities cited and those reviewed in the annotations, 10 ALR 385 and 30 ALR 1324, dispose of this contention. See also *Knewal v. Egan,* supra, 268 US 442, 69 L ed 1036; *Ex parte v. Higdon,* 30 Wash2d 546, 192 P2d 744; *Ex parte Murdock,* 5 Cal2d 644, 55 P2d 843; *Backus v. Yep Kim Yuen,* 227 F 848.

The plaintiff asserts the plausible proposition that

"Where a person convicted of a crime is granted any substantial measure of liberty by a court having jurisdiction, a revocation of such measure of liberty by any court without granting such person an opportunity for a court hearing constitutes a deprivation of liberty without due process of law."

The following cases are cited in support: *United States v. Van Riper,* 99 F2d 816; *Hollandsworth v. United States,* 34 F2d 423; *Ex parte Lucero,* 23 NM 433, 168 P 173; *State v. Zolantakis,* 70 Utah 296, 259 P 1044; *State v. O'Neal,* 147 Wash 169, 265 P 175; *Brill v. State,* 159 Fla 682, 32 So2d 607; *Plunkett v. Miller,* 161 Ga 466, 131 SE 170; *Anderson v. Alexander,* 191 Or 409, 229 P2d 633, 230 P2d 770.

The cases cited are authority for the proposition that when a court suspends execution of sentence or places a convict on probation, it must hold a hearing before revoking its previous order. In such a case, the decision revoking probation is based upon events which have occurred subsequent to the original sentence. In the case at bar, the appellate decision relates to the identical facts and issues of law on which the decision of the trial court was based. The cases cited are not in point.

6. By his fourth assignment the plaintiff urges that

"The Court erred in failing to rule on the demurrer to the Traverse that Appellant's imprisonment is void if at the time of Appellant's seizure and transportation to Oregon he was in custody of the State of Washington pursuant to a criminal conviction under the laws of the State of Washington, and was not lawfully released from said custody, as alleged in the Traverse."

The allegations of the traverse to which reference is made in this assignment are found in paragraph V, 5, supra. Upon this issue, the traverse relies upon vague assertions and conclusions of law. That the plaintiff was forcibly transported from the state of Washington to this state does not establish any illegality. The statement that persons seizing the plaintiff acted without legal authority is a mere conclusion of law. That the extradition proceedings were not authorized by the laws of Oregon is immaterial. It is the law of the state of Washington which controls the actions of officials in that state in surrendering a prisoner to the representatives of this state. The allegation that the plaintiff was not lawfully released by the authorities in Washington is a mere conclusion of law.

We recognize that some relaxation of strict rules of pleading is permissible when constitutional issues are raised by habeas corpus and when the pleadings are drawn by an unskilled prisoner. But, in this case, the plaintiff is represented by counsel of some experience in the representation of convicts. The pleading is insufficient.

■ Assuming that the pleading was sufficient, there is no merit in plaintiff's contention. It is no doubt true that the state of Washington might refuse to surrender the plaintiff until he had served his Washington

sentence. But so far as proceedings in Oregon are concerned, it might also waive that right and surrender him to the demanding state. The plaintiff relies upon the case of *Carpenter v. Lord,* 88 Or 128, 171 Pac 577. The question in that case was whether an Oregon court should permit the state of California to extradite a person serving a sentence in Oregon. At that time section 1874 of Lord's Oregon Laws provided that

"When the person demanded is in custody in this state, either upon a criminal charge, an indictment for a crime, or a judgment upon a conviction thereof, he cannot be delivered up until he is legally discharged from such custody; * * *."

This court, by a majority decision, held that the language of section 1874 was mandatory, "and completely removes any discretion which the executive might otherwise exercise in such a case." In *Carpenter v. Lord,* the question concerned the duty of an Oregon court in the surrender of an Oregon prisoner. In the case at bar, the question does not relate to the power or duty of the asylum state, Washington, but to the power of the Oregon court to try a person who is under conviction in Washington but who has been forcibly brought to this state. The Washington authorities are making no claim for him. There is no reason to assume that the Oregon authorities assisted him in breaking jail in Washington, and, on the contrary, we may assume that in some way the Washington authorities turned him over to the representatives of this state. In any event, this assignment of error is without merit under the modern authorities, state and federal. The rule has been stated thus:

" 'Courts of criminal jurisdiction need not inquire how the prisoner at the bar came within the reach of their mandates; for jurisdictional purposes

it is sufficient that he is there. * * *' " *Chapman v. Scott,* 10 F2d 156; affirmed 10 F2d 690.

To the same effect see *Frisbie v. Collins,* 342 US 519, 96 L ed 541; *Ponzi v. Fessenden,* 258 US 254, 66 L ed 607; *Wall v. Hudspeth,* 108 F2d 865; *United States v. Farrell,* 87 F2d 957; *State v. Long,* 195 Or 81, 244 P2d 1033.

We find no merit in the contention that the state was barred by laches from reimprisoning the plaintiff pursuant to the mandate of this court in the first habeas corpus case.

The judgment of the circuit court dismissing the writ of habeas corpus and remanding the plaintiff to the custody of the warden of the penitentiary is affirmed.